UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Richard Davis,

      Plaintiff,

      v.                                      Civil Action No. 5:10-CV-154

Andrew Pallito, Commissioner,
Vermont Department of Corrections,
Jason Kennedy, Caseworker Supervisor,
Out-of-State Unit, Vermont Department of Corrections,
Jeanne Jean, Caseworker, Out-of-State Unit,
Vermont Department of Corrections,
Kim Bushey, Clinical Specialist,
Vermont Department of Corrections,
Trudee Ettlinger, ADA Director,
Vermont Department of Corrections,

      Defendants.

## REPORT AND RECOMMENDATION
(Docs. 4, 11, 19)

*Pro se* plaintiff Richard Davis, a Vermont inmate incarcerated in Kentucky, brings this action claiming that the defendants violated his constitutional rights and discriminated against him in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Specifically, Davis contends that he has been terminated from Vermont Department of Corrections' ("DOC") cognitive self-change program because of his learning disability. (Doc. 19 at 5.) He further asserts that he has been wrongfully denied reasonable accommodations for his learning disability, resulting in his inability to participate in the program. (Doc. 19 at 1.)

Pending before the Court is Defendants' Motion to Dismiss. *See* Fed. R. Civ. P. 12(b)(6). (Doc. 11.) The Court has liberally construed Davis's Amended Complaint. (Doc. 19.) For the reasons set forth below, I recommend that Defendants' Motion to Dismiss be GRANTED.

## Factual Background

Davis is a Vermont inmate under the custody and control of the DOC, presently incarcerated in Kentucky. Davis was convicted of simple assault and kidnapping, and on January 1, 1995, he received a sentence of twenty-five years to life. (Doc. 4-18 at 3.) Davis's offender classification requires that he participate in a rehabilitative program called "cognitive self-change" while he is incarcerated in order to be eligible for release before his maximum sentence expires. (Doc. 4-18 at 4; Doc. 11 at 2); Vt. Dep't of Corr. Directives 371.09, 371.12.

Participation in Cognitive Self-Change ("CSC") involves group discussions, reading, and journal writing assignments aimed at facilitating inmates' progression toward self-awareness and self-responsibility. Thomas Powell et al., *Vermont's Cognitive Self-Change Program: A 15-Year Review*, CORRECTIONS TODAY, July 2001, at 117. CSC is implemented in many jurisdictions throughout the United States, Canada, and Europe. *Id.* at 118. One of Davis's CSC program requirements is that he must read aloud to other program participants the police affidavit describing his crimes. (Doc. 4-4.)

## I.    Grievances Filed with DOC

On September 20, 2008, Davis submitted a grievance form complaining that he had been "removed" from CSC "for being unable to read the [police] affidavit[ ]" that

described his crimes.  (Doc. 4-2.)  Upon investigation of Davis's grievance, Assistant

Superintendent David Martinson reported that the reason Davis was unable to read the

affidavit was that Davis "is illiterate" and that "Davis states he was found innocent of

many of the statements in his affidavit."  (Doc. 4-4.)  In his findings and

recommendations, Martinson further stated that

> Mr. Davis is in agreement that we can meet his needs by having another
> inmate help him complete written assignments.  The main issue is that Mr.
> Davis . . . [is] in denial of aspects of his crime.… Unless the court
> intervenes the affidavit of record is considered fact and Mr. Davis is
> ineligible for CSC based on that level of denial.

(*Id.*)

Subsequently, Davis filed a form "Decision to Appeal to Corrections Executive."

(Doc. 4-5.)  On the form, Davis set forth three reasons why he was unsatisfied with

Martinson's response to his grievance.  First, Davis wrote that "Mr. Martinson

erroneously states that I agreed to have another inmate assist me in my programming. . . .

I feel that the DOC should provide assistance of QUALIFIED STAFF to assist people

who are illiterate and not try to foist that obligation off on an Inmate."  (*Id.*)  Second,

Davis wrote that

> Mr. Martinson also erroneously asserts that I am in denial of certain
> 'aspects' of my case.  I am not denying anything that I did, only those
> aspects which the jury found did not happen.  Furthermore, since I cannot
> adequately understand the affidavits I am unsure which aspects Mr.
> Martinson is relying upon to find I am in denial.

(*Id.*)  Third, Davis wrote that "[i]t surely cannot be in anyone's interest for me to adopt

'facts' which are not true simply to successfully complete the program.  In effect what

3

you would ask is that I lie in order to get out of jail!"  (*Id.*)  No response from the Corrections Executive is included in Davis's submissions.

On January 29, 2009, Davis submitted a "Decision Appeal to Commissioner."  On this form, Davis did not allege that he was dissatisfied with the Corrections Executive's handling of his grievance based upon any complaint arising out of Davis's problems with reading and writing.  Davis stated only that:

> My assertion is that some of the facts and circumstances contained in the Affidavit . . . [are] inaccurate.  I request to review the Affidavit with a CSC staff member to amend information that is inaccurate based upon a jury finding me guilty of lesser included offenses as opposed to the original indictment . . . . I have never denied programming and only seek to clarify certain aspects of the Affidavit in order to meaningfully participate and successfully complete CSC.

(Doc. 4-7.)  No response from the Commissioner is included in Davis's submissions.

Davis then filed a "Request for Reasonable Accommodation/Response Form" on November 18, 2009.  On this form, Davis stated that he had a "reading and writing disability."  (Doc. 4-9.)  The accommodation he requested was "[a]n individual with  . . . education in the field of reading and writing commonly known as literacy which is recognized by the ADA statute."  (*Id.*)  Davis had not yet received any response as of January 7, 2010, so he filed an "Accommodation Decision Appeal to Commissioner." (Doc. 4-11) in which he asked that the ADA coordinator respond to his request.  He further asserted that "[t]his matter is a constant reminder that [DOC] is unable to accommodate my needs . . . . [DOC] was advised by myself that I have a Disability that would preclude me from . . . participation [in CSC] without . . . assistance."  Davis further asserted that assistance from another inmate would not be sufficient.  (*Id.*)

In response to Davis's appeal, Commissioner Andrew Pallito wrote to Davis on January 29, 2010.  The letter provided:

> My office reviewed your appeal that cites you were removed from [CSC] because you were unable to read or write.  You were offered reading and writing supports to help you succeed in the program along with other approaches to help you master the program content.  However, I am informed that you refused to participate in the program altogether.  We provide reading and writing supports to many individuals enrolled in the CSC program, and will make these supports available to you if you attend the program.

(Doc. 4-13.)  Davis and Pallito exchanged a series of subsequent letters, in which Davis attempted to clarify that he believed he was entitled to professional reading and writing supports under the ADA due to "dyslexia."  Pallito's responses attempted to clarify that "reading and writing help" would be available to Davis to support his "weaknesses in reading and writing" once Davis was eligible to re-enroll in CSC.  (Docs. 4-14; 4-15; 4-16.)

## II.    Davis's Complaint and Supplemental Submissions

On June 30, 2010, Davis filed a Complaint in this Court, contending that Defendants wrongfully denied him reasonable accommodations for his learning disability, resulting in his inability to participate in the CSC program and that Defendants wrongfully terminated him from the program.  (Doc. 4.)  Defendants are Andrew Pallito, Commissioner of the DOC, and other named DOC officials.  (*Id.*)  Davis's Complaint does not set forth which officials he alleges engaged in what acts specifically, and the Complaint also fails to state whether the claims are brought against Defendants in their individual or official capacities.  In light of Davis's *pro se* status, I read his Complaint as

if each claim is brought against each official in both his or her individual and official capacity. *See Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 316 (S.D.N.Y. 2007) (observing the mandate that "*pro se* pleadings are to be given liberal construction").

On March 2, 2011, Davis was granted leave to amend his Complaint. (Doc. 18.) The Amended Complaint only added an allegation that Defendants' conduct "involves the Failure to make alterations to accommodate a disability." (Doc. 19 at 9, ¶ 38.) In Davis's Amended Complaint, he argues that Defendants' conduct violates Title II of the ADA, Section 504, and Davis's "Right of Equal Protection under the Fifth and Fourteenth Amendment." (Doc. 19 at 9, ¶ 37.) He seeks declaratory and injunctive relief as well as compensatory damages, punitive damages, and damages "for mental anguish and emotion[al] distress." (Doc. 19 at 9-12.)

On May 16, 2011, Davis submitted two additional exhibits to supplement his Amended Complaint. The first exhibit is a letter to Davis from Defendant Jeanne Jean, dated May 5, 2011, regarding Davis's eligibility for CSC. The letter provides:

> Dear Mr. Davis,
>
> You are eligible to participate in Phase One of the Cognitive Self-Change (CSC) program. Please fill out the attached CSC interest form and return it within 30 days so that we can proceed with CSC enrollment.

(Doc. 20-2 at 1.) The attached CSC Interest Form provides options for Davis to check indicating whether he chooses to be "interviewed, evaluated, and considered" for CSC. (Doc. 20-2 at 2.) The form also provides Davis the opportunity to choose not to be considered or to decline entry to CSC. (*Id.*) The form Davis submitted has not been

filled out, other than having Davis's name printed at the top.  The second exhibit is a letter from Davis to Jean, dated May 12, 2011, responding to Jean's letter.  In the letter, Davis emphasizes that he is "very much willing to participate" in CSC, but that he believes DOC is "ignoring [his] requests for . . . disability accommodations."  (Doc. 20-1 at 1.)  He further requests that DOC inform him what specific accommodations DOC will be providing him to assist him in CSC.   (Doc. 20-1 at 2.)

**III.     Defendants' Motion to Dismiss**

Defendants filed a Motion to Dismiss (Doc. 11), arguing that Davis's Complaint fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Defendants contend that all of Davis's arguments fail to state a claim under the relevant statutory or constitutional provisions or, alternatively, that Davis's claims are barred by sovereign immunity under the Eleventh Amendment.  (Doc. 11.)

<u>**Discussion**</u>

Davis argues that he is a qualified individual with a disability and that defendants have failed to provide him with reasonable accommodation in violation of Title II of the ADA and Section 504 of the Rehabilitation Act.  (Doc. 19 at 1, 8.)  He further argues that, due to his disability, Defendants are excluding him from participation in CSC or denying him the benefits of CSC.  (Doc. 19 at 8.)   Davis also contends that Defendants' conduct violates his right of equal protection under the Fifth and Fourteenth Amendments.  (Doc. 19 at 9, ¶ 37.)

Defendants argue that Davis is not a qualified individual with a disability.  (Doc. 11 at 6.)  Defendants further assert that, assuming Davis is a qualified individual with a

disability, he is not being excluded from participating in or denied the benefits of CSC. (Doc. 11 at 7.)   Defendants also argue that Davis's claims are barred by sovereign immunity and that he fails to set forth any claim under the Fifth or Fourteenth Amendments.   (Doc. 11 at 4-5, 8.)

## I.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."   A properly pleaded complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   The Court must accept the allegations of the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.  *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).   "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not shown that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (quotations and brackets omitted); Fed. R. Civ. P. 8(a)(2).   The Court must also construe *pro se* complaints liberally to raise the strongest arguments that they suggest.  *Green*, 260 F.3d at 83.

## II.   Title II of the ADA and Section 504 of the Rehabilitation Act

The ADA was enacted to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.  42 U.S.C. § 12101(b)(1); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).   Title II

proscribes discrimination against individuals with disabilities in accessing public services. Specifically, that section provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute also requires "that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002). Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Title II of the ADA applies to state prisoners. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998). Under the circumstances of this case, the same analysis applies to the merits of Davis's claims under both Section 504 of the Rehabilitation Act and Title II of the ADA. *See Fulton*, 591 F.3d at 43; *Henrietta D.*, 331 F.3d at 272 (finding only subtle distinctions between the two acts).

Defendants argue that Davis's claims under Title II are "barred because Title II . . . is an invalid abrogation of the State's sovereign immunity." (Doc. 11 at 4.) Before the

Court addresses the merits of Davis's claims, it must first determine whether Defendants are subject to suit under Title II and Section 504.

## A.     Defendants Are Not Subject to Suit in Their Individual Capacities

It is well-established that Title II of the ADA does not authorize suits against state officials in their individual capacities. *See Browdy v. Karpe*, 131 Fed. Appx. 751, 754 (2d Cir. 2005); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). The same conclusion applies to Section 504 of the Rehabilitation Act. *Garcia*, 280 F.3d at 111-12; *Goonewardena*, 475 F. Supp. 2d at 327. Thus, to the extent that Davis seeks to sue Defendants in their individual capacities, I recommend that the Court dismiss Davis's claims under Title II and Section 504.

Whether Defendants are subject to suit in their official capacities, however, is "[l]ess amenable to a tidy answer." *Cole v. Goord*, No. 05 Civ. 2902(GEL), 2009 WL 2601369, at *4 (S.D.N.Y. Aug. 25, 2009). In determining the viability of Davis's claims, the Court must consider the Eleventh Amendment's limitations upon federal court jurisdiction over suits against states.

## B.     Official Capacity Suits and Eleventh Amendment Sovereign Immunity

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. The Eleventh Amendment has also been interpreted to bar suits against a state in federal court brought by the State's own citizens. *Alden v.*

*Maine*, 527 U.S. 706 (1999).  Thus, absent the State's consent, suits against the State in federal court are generally barred by the Eleventh Amendment.

Although a state may not be sued directly absent consent, under the doctrine of *Ex Parte Young*, state officers can be sued in their official capacities.  *Ex Parte Young*, 209 U.S. 123 (1908); *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984).  Suits against state officers, however, can only seek prospective injunctive or declaratory relief for violations of federal law.  *Edelman v. Jordan*, 415 U.S. 651, 664-65 (1974).  Monetary damages are not permitted because "[i]f the court were to order a state official in her official capacity to dispense compensatory relief, the monies would be drawn from the state treasury and run afoul of the Eleventh Amendment" because the State is the real party in interest.  *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009); *Edelman*, 415 U.S. at 664.

A state can waive its sovereign immunity or Congress can abrogate a state's sovereign immunity by statute.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).  In order to abrogate a state's sovereign immunity, thereby permitting an action for damages against a state, Congress must (1) must make its intention to abrogate unmistakably clear in the language of the statute and, with respect to Title II of the ADA, (2) act pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment.[1]  *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).  "Section 5 of the Fourteenth Amendment authorizes Congress to enforce, by appropriate legislation the constitutional guarantee that no State shall deprive any person of life,

---

[1]  Title II of the ADA was enacted pursuant to Congress's power under Section 5 of the Fourteenth Amendment.  42 U.S.C. § 12101(b)(4).

liberty, or property, without due process of law nor deny any person equal protection of the laws." *Garcia*, 280 F.3d at 108 (quotations omitted).

It is not well settled that conduct proscribed by Title II of the ADA is always a valid exercise of congressional power under Section 5 of the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 158-59 (2006); *Tennessee v. Lane*, 541 U.S. 509 (2004); *Garcia*, 280 F.3d at 107; *Andino v. Fischer*, 698 F. Supp. 2d 362, 377 (S.D.N.Y. 2010).  Some courts have held that Title II is, in part, an invalid abrogation of a state's sovereign immunity and that a plaintiff cannot recover monetary damages against a state actor in his official capacity for some alleged Title II violations.  *See Garcia*, 280 F.3d at 107; *Degrafinreid v. Ricks*, No. 03 Civ. 6645(RWS), 2004 WL 2793168, at *5 (S.D.N.Y. Dec. 6, 2004).

Defendants urge the Court to adopt the approach taken in *Andino* in determining whether the particular Title II violation claimed by Davis is a valid abrogation of state sovereign immunity which would permit a suit for damages against the defendant-officers in their official capacities.  In *Andino*, the court described and consolidated the analytical approaches implemented in recent cases, setting forth a decision-tree style method a court should employ in determining whether the Title II damages claim is permitted based upon *United States v. Georgia*.  First, "[i]f the court concludes there was no violation of Title II, the claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim."  *Andino*, 698 F. Supp. 2d at 377.  Second, if the court finds a Title II violation, it then must address "whether that conduct also violates the Fourteenth Amendment."  *Id.*  "If so, abrogation is proper under [*United States v.*] *Georgia*."  *Id.*  If

the court finds no Fourteenth Amendment violation, the court must then consider "whether abrogation [of sovereign immunity] in this case would be deemed a valid exercise of Congressional power under § 5 of the Fourteenth Amendment." *Id.* at 378.

With respect to Section 504, courts have acknowledged that the analysis for the purposes of sovereign immunity is different because Congress enacted the Rehabilitation Act pursuant to its powers under the Spending Clause of Article I. *Goonewardena*, 475 F. Supp. 2d at 327. As a result, Congress "may therefore impose conditions, including agreement to be subject to suit on state entities that receive federal funds." *Id.* There is no need for this Court to "delve into these deep constitutional waters," however, with respect to Davis's claims arising under either statute because Davis's claims fail for other reasons. *Cole*, 2009 WL 2601369, at *7; *Bain v. Gorczyk*, No. 1:07-CV-116, 2010 WL 1257646, at *8 (D. Vt. Feb. 19, 2010). As set forth below, the record establishes in this case that, viewing the facts in the light most favorable to Davis, there was no violation of Title II and no violation of Section 504. Therefore, I recommend the Court decline to reach the constitutional issues raised by Defendants' assertion of sovereign immunity.[2]

### C. Davis's Amended Complaint Fails to State a Claim Under Title II or Section 504

Davis argues that he was terminated from CSC due to his learning disability. He also contends that Defendants failed to provide him with reasonable accommodation that

---

[2] In any event, even if the Court were to conclude that Title II's abrogation of state sovereign immunity exceeded Congress's authority under Section 5 of the Fourteenth Amendment, such a conclusion would only affect Davis's claims for *monetary* damages under Title II. Davis's claims for injunctive relief would still be permitted to go forward. *See Ex Parte Young*, 209 U.S. at 155-56; *Henrietta D.*, 331 F.3d at 287-88; *Cole*, 2009 WL 2601369, at *3. Additionally, Defendants do not argue that Davis's claims arising under Section 504 are barred by sovereign immunity.

would enable him to participate in CSC.  (Doc. 19 at 7-8.)  Defendants assert that Davis is not a qualified individual with a disability and that he is not being excluded from participation in CSC.  (Doc. 11 at 6-7.)

To state a prima facie claim under either the ADA or the Rehabilitation Act, Davis must allege:  (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability.  *Fulton*, 591 F.3d at 43 (2d Cir. 2009); *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003).[3]  A qualified individual can base a discrimination claim on any of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).  "The term 'qualified individual with a disability' means an individual with a disability, who with or without reasonable modifications to rules, policies or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

As set forth below, I conclude that Davis is not a qualified individual with a disability within the meaning of the ADA.  Alternatively, Davis is not being excluded from participating in CSC.  Under either conclusion, Davis fails to state a claim for relief

---

[3]  In addition, to establish a claim under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding.  *Henrietta D.*, 331 F.3d at 272.  This element, however, is not in dispute.

under Title II of the ADA or Section 504 of the Rehabilitation Act, and I recommend that the Court GRANT Defendants' motion to dismiss with respect to this claim.

### 1.    Davis is Not a Qualified Individual with a Disability

To be a qualified individual with a disability, Davis must "meet the essential eligibility requirements" for CSC.  42 U.S.C. § 12131(2); *see Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 87 (2d Cir. 2004) (noting that a plaintiff bears the burden of presenting evidence that he is "otherwise qualified" for the program or activity).  One of Davis's requirements for CSC includes reading aloud the police affidavit describing his offenses.  (Doc. 4-4.)  It is undisputed that Defendants are willing to provide an accommodation to assist Davis in the execution of this requirement.  (Doc. 4-14.)  The purpose of this requirement is to help the inmate progress towards taking responsibility for his crimes.  Thus, it appears that an "essential eligibility requirement" for participation in CSC is an offender's willingness to take steps towards taking responsibility for his crimes.

Davis's exhibits establish that, notwithstanding any learning disabilities he may legitimately have, he does not want to comply with this requirement because he believes the affidavit is untrue.  (Docs. 4-5; 4-7.)  Specifically, Davis wrote that "[i]t surely cannot be in anyone's interest for me to adopt 'facts' which are not true simply to successfully complete the program.  In effect what you would ask is that I lie in order to get out of jail!"  (Doc. 4-5.)  Davis seeks permission instead to "clarify" the affidavit.  (*Id.*)  It is therefore evident from Davis's submissions that he is not prepared to take responsibility for the crimes described in the affidavit, and, as a result, he does not meet the essential

eligibility requirements for CSC.  *See Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397,

406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's

requirements in spite of his handicap.").  Davis is, accordingly, not a "qualified

individual with a disability" within the meaning of the ADA.  42 U.S.C. § 12131(2).

### 2.    Davis Was Not Excluded From CSC

Davis's Amended Complaint and attached exhibits fail to set forth any facts

supporting that Defendants excluded him from CSC based upon similar reasoning.  As

noted above, the initial investigative response to Davis's grievances stated that Davis was

"ineligible" based upon Davis's denial of facts contained in the police affidavit

describing his crime.  (Doc. 4-4.)  The response further indicated, however, that Davis

would become eligible for CSC when "those issues are resolved."  (*Id.*)  Similarly,

Commissioner Pallito's correspondence with Davis indicates that it was Davis's choice

not to participate, and that the DOC would permit him to participate at a later date if

Davis changed his mind.  (Docs. 4-13; 4-15.)  Davis's February 2010 Parole Summary

provides that Davis would be "eligible to reapply for CSC in 11/2010."  (Doc. 4-18 at 3.)

Finally, Defendant Jean's May 5, 2011 letter invites Davis to submit paperwork to enroll

in CSC.  (Doc. 20-2.)  The language in the exhibits simply does not evince any intent to

exclude Davis.  Rather, it appears Defendants would welcome Davis's participation in

CSC as soon he agrees to comply with the program's requirements.

Even assuming Davis was a qualified individual with a disability and that he was

excluded from CSC, the reason for any such exclusion is not because of the disability.

Instead, the reason for the purported exclusion is, again, that Davis does not want to read

the police affidavit that describes his crimes, which is a CSC requirement.  Specifically, on Davis's "Decision Appeal to Commissioner," he wrote that "the facts and circumstances contained in the affidavit" are "inaccurate."  He requested that he be permitted to "clarify" the affidavit.  (Doc. 4-7.)  Similarly, in Davis's "Decision to Appeal to Corrections Executive" (Doc. 4-5), he wrote that "[i]t surely cannot be in anyone's interest for me to adopt 'facts' which are not true simply to successfully complete the program.  In effect what you would ask is that I lie in order to get out of jail!"  (*Id.*)  Accordingly, I conclude that if in fact Davis was excluded from the program, any such exclusion is based upon his failure to comply with a program requirement and not upon his disability.

### 3.    Reasonable Accommodation

Assuming that Davis is a qualified individual with a disability, any claim that Defendants have failed to provide him with reasonable accommodation is premature. Title II requires public entities to "take reasonable measures to remove architectural and other barriers to accessibility."  *Lane*, 541 U.S. at 531.  "Title II does not require States to employ any and all means to make . . . services available to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs."  *Id.*  "As Title II's implementing regulations make clear, the reasonable modification requirement can be satisfied in a number of ways. . . ."  *Id.*  Whether or not something constitutes a reasonable accommodation is a fact-specific inquiry that must be determined on a case-by-case basis. *Wernick v. Fed. Reserve Bank of New York*, 91 F.3d 379, 385 (2d Cir. 1996).

Here, Defendant Pallito's January 29, 2010 letter establishes that Defendants are willing to take some measure to accommodate Davis's claimed disability. ("We provide reading and writing supports to many individuals enrolled in the CSC program, and will make these supports available to you if you attend the program." (Doc. 4-13)). While Davis asserts that Defendants' offers of reading and writing supports are not sufficient, the exhibits reveal that Davis has not yet given Defendants an opportunity to assess what accommodations his participation might require and then to provide such accommodations. *See Connecticut v. Duncan*, 612 F.3d 107, 114 (2d Cir. 2010) (declaring issue not fit for review because the court did "not yet have a clear picture of solutions the [administrative official] might propose, or, for obvious reasons, the State's position on any such solutions").

Davis's frustration with the complications surrounding his participation in CSC is evident from his pleadings and submissions. However, at this point, the Court can only speculate as to whether Defendants would fail to provide reasonable accommodation. Davis's exhibits establish that Defendants will permit Davis to enroll in CSC, that they have offered reading and writing supports and continue to offer supports, and that Davis has not yet put forth a good faith effort to work with the supports offered. Until such time as Davis is enrolled in CSC and utilizing the supports in place, he cannot claim that Defendants have engaged in any wrongful conduct in failing to provide reasonable accommodations for his alleged disability. *See Tsombanidis*, 352 F.3d at 578 (ruling that, under the Fair Housing Act, "[t]o prevail on a reasonable accommodation claim, plaintiffs must first provide the governmental entity an opportunity to accommodate them

through the entity's established procedures used to adjust the neutral policy in question");
29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation [in
the context of employment] it may be necessary for the covered entity to initiate an
informal, interactive process with the qualified individual with a disability in need of the
accommodation.")

Presumably, Davis will enroll in CSC, as it is a required condition for his parole
eligibility.  Defendants represent, and Davis does not dispute, that upon Davis's
enrollment, Defendants will offer reading and writing supports to Davis.  Giving the
parties an opportunity to assess what type of accommodation might best suit Davis's
needs appears to be the most practical approach under the circumstances to meet the
parties' common objective – that Davis enroll in and successfully complete CSC.

## III.    Constitutional Arguments

Davis next argues that Defendants have violated his "Right of Equal Protection
under the Fifth and Fourteenth Amendment."  (Doc. 4 at 8, ¶ 33; Doc. 19 at 9, ¶ 37.)  He
seeks damages, injunctive and declaratory relief under 42 U.S.C. § 1983.  (Doc. 19 at 9-
11.)  Defendants assert that Davis "has failed to state a prima facie case for violation of
any constitutional right."  (Doc. 11 at 8.)

"To bring a successful claim under section 1983, a plaintiff must show in the first
instance that:  (1) the defendant acted under color of state law, and (2) as a result of the
defendant's actions, the plaintiff suffered a denial of his federal . . . constitutional rights."
*Dellate v. Great Neck Union Free School Dist.*, No. CV 09-2567(AKT), 2010 WL
3924863 at *5 (E.D.N.Y. Sept. 30, 2010) (citing *Annis v. Cnty of Westchester*, 136 F.3d

239, 235 (2d Cir. 1998)).  There is no dispute that Defendants acted under color of state law in handling Davis's participation in CSC.  Accordingly, the Court need only address the second inquiry, whether Davis's Complaint alleges that, as a result of defendants' actions, Davis suffered a denial of his federal constitutional rights under the Fifth and Fourteenth Amendments to the Constitution.

The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike.  U.S. CONST. amend. XIV, § 1 (providing that no state shall "deny to any person within its jurisdiction the equal protection of the laws."); *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Fifth Amendment contains no Equal Protection Clause; however "the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is so unjustifiable as to be violative of due process." *Schlesinger v. Ballard*, 419 U.S. 498, 500 n.3 (1975) (quotation omitted).  Thus, the United States Supreme Court has construed the Fifth Amendment to include an equal protection guarantee applicable to the federal government, which is examined under the same principles that apply to such claims under the Fourteenth Amendment.  *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991).  The Court need not address Davis's claim of equal protection under the Fifth Amendment because Defendants are not federal government actors.  *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 542 n.21 (1987) (explaining that the "Fourteenth Amendment applies to actions by a State" only whereas the Fifth Amendment equal protection guarantee applies to federal

government actions); *Schwelker v. Wilson*, 450 U.S. 221, 227 n.6 (1981) ("This Court repeatedly has held that the Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment.").

In order for a prisoner to state a violation of the Fourteenth Amendment Equal Protection Clause, he "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). "He must also show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that this treatment was not reasonably related to any legitimate penological interests." *Id.* (quotation and brackets omitted).

Here, Davis's Equal Protection claim is limited to one brief reference to the Equal Protection Clause itself in his Amended Complaint (Doc. 19 at 9, ¶ 37). Davis does not allege that he was treated differently than others similarly situated, nor does he set forth any facts that could generously be construed as making such an allegation. Thus, he has not stated an equal protection cause of action, and I recommend that Defendants' motion to dismiss this claim be GRANTED.

## Conclusion

Based on the foregoing I recommend that the Court GRANT Defendants' Motion to dismiss and that Davis's Amended Complaint be DISMISSED without prejudice.

Dated at Burlington, in the District of Vermont, this 16th day of June, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).