U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 SEP 22 AM 10: 26

CLERK
BY ᴾᴹ
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| RICHARD DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-154 |
| ) | |
| ANDREW PALLITO, Commissioner, ) | |
| Vermont Department of Corrections, ) | |
| JASON KENNEDY, Caseworker ) | |
| Supervisor, Out-of-State Unit, Vermont ) | |
| Department of Corrections, JEANNE ) | |
| JEAN, Caseworker, Out-of-State Unit, ) | |
| Vermont Department of Corrections, ) | |
| KIM BUSHEY, Clinical Specialist, ) | |
| Vermont Department of Corrections, ) | |
| TRUDEE ETTLINGER, ADA Director, ) | |
| Vermont Department of Corrections, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**
(Docs. 11, 21 & 24)

This matter came before the court for review of the Magistrate Judge's June 16, 2011 Report and Recommendation ("R & R") in the above-captioned matter. (Doc. 21.) In the R & R, the Magistrate Judge recommended granting Defendants' Motion to Dismiss Plaintiff's Amended Complaint, concluding that under Fed. R. Civ. P. 12(b)(6), Plaintiff had failed to state a claim upon which relief could be granted. (Doc 11.) Plaintiff objects to the R & R, contending that his Amended Complaint cured the deficiencies the Magistrate Judge identified in Plaintiff's initial Complaint and thus rendered Defendants' Motion to Dismiss moot. (Doc. 24.)

Plaintiff is self-represented. Defendants, all of whom are either Vermont Department of Corrections ("DOC") officials or employees, are represented by Vermont Assistant Attorney General David R. McLean.

## I. Factual Background.

The parties do not dispute the Magistrate Judge's recitation of the operative facts, which are summarized herein.

Plaintiff is a Vermont inmate under the custody and control of DOC, presently incarcerated in Kentucky. In 1995, he was convicted of simple assault and kidnapping and received a sentence of twenty-five years to life. Plaintiff's offender classification requires that, while incarcerated, he participate in a rehabilitative program called Cognitive Self Change ("CSC") in order to be eligible for early release.

Participation in CSC involves group discussions, reading, and journal writing assignments aimed at facilitating inmates' progression toward self-awareness and self-responsibility. As part of acceptance of responsibility for their crimes, participants in CSC are expected to read aloud the police affidavit(s) describing their crimes to other program participants.

On September 20, 2008, Plaintiff submitted a grievance form complaining he had been "removed" from CSC "for being unable to read the [police] affidavit[]" describing his crimes. (Doc. 4-2.) Upon investigation, Assistant Superintendent David Martinson reported Plaintiff is "illiterate," and "Plaintiff states he was found innocent of many of the statements in his affidavit." (Doc. 4-4.) In his findings and recommendations, Mr. Martinson further stated:

> Mr. Davis is in agreement that we can meet his needs by having another inmate help him complete written assignments. The main issue is that Mr. Davis . . . [is] in denial of aspects of his crime. . . . Unless the court intervenes the affidavit of record is considered fact and Mr. Davis is ineligible for CSC based on that level of denial.

(*Id.*)

Plaintiff subsequently filed an appeal setting forth three reasons why he was unsatisfied with Mr. Martinson's response. First, Plaintiff contended that he is entitled to assistance from a qualified individual to help with his reading and writing assignments, and that another inmate is not a qualified individual. Second, Plaintiff objected to being required to read portions of the affidavit describing facts with regard to which he believes the jury found him not guilty. And third, Plaintiff questioned the necessity of admitting facts that are untrue for CSC eligibility.

Thereafter, Plaintiff submitted an appeal to the Commissioner restating his belief that the affidavit describing his crimes was inaccurate and requesting the opportunity to clarify it with a CSC staff member. Plaintiff then filed a "Request for Reasonable Accommodation/Response Form," stating he has a "reading and writing disability" and requesting assistance from an individual trained in the field of reading and writing. (Doc. 4-9.) As of January 7, 2010, Plaintiff had not received a response so he filed an "Accommodation Decision Appeal to Commissioner," in which he asked that the ADA coordinator respond to his request and reiterated his belief that assistance from another inmate is insufficient.

In response to Plaintiff's appeal, the Commissioner wrote to Plaintiff as follows:

> My office reviewed your appeal that cites you were removed from [CSC] because you were unable to read or write. You were offered reading and writing supports to help you succeed in the program along with other approaches to help you master the program content. However, I am informed that you refused to participate in the program altogether. We provide reading and writing supports to many individuals enrolled in the CSC program, and will make these supports available to you if you attend the program.

(Doc. 4-13.) Plaintiff and Mr. Pallito exchanged a series of letters, in which Plaintiff repeated his belief that he is entitled to professional reading and writing supports under the Americans with Disabilities Act ("ADA"). Mr. Pallito responded that "reading and writing help" would be available to Plaintiff to support his "weaknesses in reading and writing" once he was eligible to re-enroll in CSC. (Docs. 4-14; 4-15; 4-16.)

3

## II. Procedural Background.

On June 30, 2010, Plaintiff filed a complaint, alleging federal question jurisdiction and claiming Defendants denied him reasonable accommodations for his learning disability, thus depriving him of the ability to participate in CSC, and wrongfully terminating him from that program. In his initial Complaint, Plaintiff alleged a claim under 42 U.S.C. § 1983 based on allegations that Defendants violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 794, and his Equal Protection rights under the Fifth and Fourteenth Amendments. Plaintiff sought declaratory and injunctive relief, as well as compensatory and punitive damages.

Defendants filed waivers of service on January 13, 2011. On January 18, 2011, Plaintiff filed a Motion for Default Judgment, asserting Defendants failed to file a responsive pleading within the appropriate timeframe of 120 days after he filed his Complaint.

Defendants filed their Motion to Dismiss on January 24, 2011, arguing Plaintiff failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

In his January 28, 2011 R & R, the Magistrate Judge recommended that the court deny Plaintiff's Motion for Default Judgment. The Magistrate Judge explained that, pursuant to Fed. R. Civ. P. 4(d)(3), Defendants' responsive pleadings were due 60 days after they filed the waiver of service, which was January 24, 2011, and accordingly Defendants timely filed their Motion to Dismiss. The Magistrate Judge explained that the Defendants' Motion to Dismiss suspends the deadline for filing a responsive pleading until after the court issues a ruling on the motion pursuant to Fed. R. Civ. P. 12(a)(4)(A). Based on his conclusion that Defendants' responsive pleading was not yet due, the Magistrate Judge recommended denying Plaintiff's motion. This court adopted the January 28, 2011 R & R on February 16, 2011.

On March 2, 2011, the Magistrate Judge granted Plaintiff's Motion for Leave to Amend his Complaint. The Amended Complaint is identical to Plaintiff's initial Complaint except for an allegation that Defendants' conduct "involves the [f]ailure to

4

make alterations to accommodate a disability" (Doc. 19 at 9, ¶ 38) and the deletion of Plaintiff's § 1983 claim. In the Amended Complaint, Plaintiff seeks declaratory and injunctive relief as well as compensatory damages, punitive damages, and damages "for mental anguish and emotion[al] distress." (Doc. 19 at 9-12.)

On May 16, 2011, Plaintiff submitted two additional exhibits to supplement his Amended Complaint. The first is a letter to Plaintiff from Defendant Jeanne Jean, wherein Ms. Jean informed Plaintiff that he is able to re-enroll in CSC once he completes the enrollment paperwork. The second is a letter from Plaintiff to Ms. Jean, responding that he is willing to participate in CSC if DOC provides accommodations for his disability.

The Magistrate Judge interpreted the Amended Complaint as alleging claims against each Defendant in his or her individual as well as official capacity. He recommended dismissing all claims against the Defendants in their individual capacities because Title II of the ADA and Section 504 of the Rehabilitation Act do not authorize suits against state officials in their individual capacities. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Plaintiff does not object to that portion of the R & R. Accordingly, the court hereby ADOPTS it in full.

In the R & R, the Magistrate Judge further concluded that Plaintiff had failed to state a claim under the ADA, Section 504 of the Rehabilitation Act, or the Fifth and Fourteenth Amendments. In particular, the Magistrate Judge concluded that Plaintiff had failed to establish that he was a "qualified individual with a disability" for his ADA and Rehabilitation Act claims because he had failed to allege he was otherwise eligible for CSC participation.

With regards to Plaintiff's Fifth and Fourteenth Amendment claims, the Magistrate Judge concluded that Plaintiff's bare allegations did not suffice to allege a plausible constitutional violation. The Magistrate Judge recommended dismissing Plaintiff's Fifth Amendment claims because Defendants are state actors, not federal actors, and the Fifth Amendment applies only to federal actors. Plaintiff did not object to

5

the Magistrate Judge's conclusion that he failed to state a claim under the Fifth Amendment. Therefore, the court hereby ADOPTS that part of the R & R in full.

Finally, the Magistrate Judge concluded Plaintiff failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment because he did not sufficiently allege that he was treated differently than other similarly situated individuals. Plaintiff did not object to the Magistrate Judge's recommendation that the court dismiss his Fourteenth Amendment claim because he failed to state a claim for which relief can be granted.[1] Thus, the court hereby ADOPTS this portion of the R & R in full. Accordingly, only Plaintiff's ADA and Rehabilitation Act claims remain at issue.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). A district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Self-represented parties are generally accorded leniency when making objections. *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (quoting *Vasquez v. Reynolds*, 2002 WL 417183, at *5 (S.D.N.Y. Mar. 18, 2002)). Nevertheless, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." *Dixon v. Ragland*, 2007 WL 4116488, at *1 (S.D.N.Y. Nov. 16, 2007) (citation omitted).

---

[1] Plaintiff concedes his Section 1983 claims are not viable, stating "Plaintiff's Complaint under Title 42 U.S.C. § 1983 of the civil rights code was incorrect . . . ." (Doc. 24 at 4.)

6

Here, Plaintiff reiterates his allegation that Defendants denied him reasonable accommodations for his disability in the CSC program. His primary objection to the R & R is that the Magistrate Judge erred in construing Defendants' Motion to Dismiss as if it pertained to Plaintiff's Amended Complaint, when in fact the Amended Complaint was filed *after* the Motion to Dismiss, and with leave of the court, and allegedly "cured" any deficiencies in the initial Complaint. The court concludes the Magistrate Judge acted within his discretion in treating the Motion to Dismiss as seeking dismissal of both Plaintiff's initial Complaint and his Amended Complaint that contained the same or similar deficiencies.

In addition, Plaintiff alleges that the Magistrate Judge erred in concluding that Plaintiff failed to state a claim upon which relief may be granted. For the reasons stated below, the court concludes that Plaintiff's initial Complaint and his Amended Complaint fail to state a claim for the reasons set forth in the R & R.

### B. Whether the Magistrate Judge Abused His Discretion in Treating the Motion to Dismiss as if it Pertained to the Amended Complaint.

Plaintiff's primary objection to the R & R is that it construed Defendants' Motion to Dismiss as if it pertained to the Amended Complaint. He contends that because the Magistrate Judge granted him leave to amend his Complaint, and he cured any defects in his initial pleading, the Magistrate Judge committed legal error in applying Defendants' motion to the Amended Complaint.

"As a general rule, a defendant need not file a new Rule 12 motion merely because the plaintiff amended his pleading while the defendant's motion was pending." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1100 (D. Minn. 2010); *but see Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (concluding an amended complaint filed pursuant to Fed. R. Civ. P. 15(a) renders moot a motion to dismiss directed at the original complaint). "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance." *Id.* (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R.

MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1476 (2d ed. 1990)); *see also Percival v. Girard*, 692 F. Supp. 2d 712, 714 n.1 (E.D. Mich. 2010) (examining claims set forth in the second amended complaint when deciding motion to dismiss "[g]iven the similarity between the allegations and the causes of action in the first amended complaint and the second amended complaint").

In this case, Plaintiff's Amended Complaint contained essentially the same allegations as his original Complaint.[2] Defendants need not submit a second motion where they will rely on the same arguments that they made in seeking dismissal of the initial Complaint. Therefore, the court concludes that the Magistrate Judge did not abuse his discretion in deeming Defendants' Motion to Dismiss to seek dismissal of the initial Complaint as well as the Amended Complaint.

### C. Whether the Magistrate Judge Correctly Concluded that the Amended Complaint Fails to State a Claim.

The Magistrate Judge concluded Plaintiff failed to set forth sufficient facts in his Amended Complaint to establish a *prima facie* violation under Title II of the ADA and the Rehabilitation Act because he did not otherwise meet the eligibility criteria for participation in CSC based on his unwillingness to accept responsibility for the facts of his crime as set forth in the police affidavit.

When deciding a motion brought under Rule 12(b)(6), a court assumes "all well-pleaded, nonconclusory factual allegations in the complaint to be true," *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), and determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The court also draws "all reasonable inferences in the plaintiffs' favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.

---

[2] To fulfill its obligation to construe self-represented parties' pleadings liberally, the court may address both claims made in an original complaint and those made in an amended complaint, even though the amended pleading generally supersedes the initial pleading. *Sieverding v. U.S. Dept. of Justice*, 693 F. Supp. 2d 93, 101 n.2 (D.D.C. 2010).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). Even after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), courts "remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted). But while the court is "mindful that it must not allow a *pro se* litigant's rights to be impaired by harsh application of technical rules, the rule in favor of liberal construction cannot save *pro se* litigants who do not present cognizable arguments." *Collins v. Blumenthal*, 581 F. Supp. 2d 289, 291 (D. Conn. 2008) (internal quotation marks and citations omitted).

Title II of the ADA, which applies to state prisoners, provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209-10 (1998); 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). For purposes of the motion to dismiss, Plaintiff's ADA and Rehabilitation Act claims may be addressed as a single claim. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ("[U]nless one of [the] subtle distinctions is pertinent to a particular case, we treat claims under the two statutes identically.").

To state a *prima facie* case under either Title II the ADA or Section 504 of the Rehabilitation Act,[3] a plaintiff must allege "(1) that he is a "qualified individual" with a disability; (2) that he was excluded from participation in a public entity's services,

---

[3] The parties do not dispute that Defendants receive federal funding, thus establishing the final element of a *prima facie* case under the Rehabilitation Act.

programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability. *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003).

> A "qualified individual with a disability" is defined as:
>
> > an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12132(2); *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) (defining an "otherwise qualified individual" under the Rehabilitation Act as "one who is able to meet all of a program's requirements in spite of his handicap.").

Accordingly, in order to establish that he is a qualified individual with a disability, Plaintiff must otherwise "meet the essential eligibility requirements" for participation in CSC. Plaintiff did not object to the Magistrate Judge's conclusion that he was ineligible to participate in CSC because he did not meet one of the program's essential eligibility requirements, specifically that he accept responsibility for his crimes as stated in the affidavit. The court agrees with the Magistrate Judge that, because of this undisputed fact, Plaintiff has not and cannot establish that he is an "otherwise qualified individual with a disability," and accordingly his claims under the ADA and the Rehabilitation Act fail as a matter of law. *See Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 931 (8th Cir. 1994) (concluding plaintiff was not a qualified individual under either the ADA or the Rehabilitation Act because, having exceeded the age limit of the baseball program, plaintiff could never meet the eligibility requirement of being under the age of 18, even if other accommodations were provided).

Even assuming Plaintiff was an otherwise qualified individual with a disability, his claims under the ADA and the Rehabilitation Act nevertheless fail because he has not set forth facts which show he was excluded from CSC based on his disability. Although Plaintiff was temporarily ineligible for CSC participation due to his denial of the fact of

his crime, Plaintiff's exhibits clearly indicate Defendants would allow him to resume participation when "those issues are resolved." (Doc. 4-4.)

## CONCLUSION

After careful review of the file and the Magistrate Judge's R & R, this court hereby ADOPTS the Magistrate Judge's R & R insofar as it applied Defendants' Motion to Dismiss to the Amended Complaint, and as it pertains to the legal insufficiency of Plaintiff's Amended Complaint. Accordingly, the court hereby GRANTS Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 22nd day of September, 2011.

Christina Reiss, Chief Judge
United States District Court